UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE BARZI, on behalf of herself and others similarly situated,<br><br>                Plaintiff,<br><br>  v.<br><br>EQUINOX HOLDINGS, INC.; and DOES 1 to 100, inclusive,<br><br>                Defendants. | Case No. 2:24-cv-04117-SPG-E<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br>**[ECF NOS. 11, 13]** |

Before the Court is Plaintiff Charlotte Barzi's ("Plaintiff") Motion to Remand the Action to State Court and Request for Attorneys' Fees in the Amount of $7,500.00. (ECF No. 13-1 ("Motion")). Having considered the parties' submissions, the relevant law, and the record in this case, the Court finds this matter suitable for resolution without a hearing. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, the Court DENIES Plaintiff's Motion.

I.  **BACKGROUND**

On April 5, 2024, Plaintiff initiated this wage and hour class action against Defendant Equinox Holdings, Inc. ("Defendant") in Los Angeles County Superior Court. (ECF No. 1-3 ("Complaint")). Plaintiff effectuated service on April 17, 2024, and on

May 17, 2024, Defendant removed the action to this Court. (ECF No. 1 ("Notice of Removal")). On June 14, 2024, Plaintiff filed the instant Motion, seeking to remand this action to state court. (Mot.). Pursuant to the parties' stipulations to continue the hearing date for the Motion, *see* (ECF Nos. 15, 22), Defendant timely opposed, (ECF No. 24 ("Opposition")), and Plaintiff timely replied, (ECF No. 26 ("Reply")).

## II. LEGAL STANDARD

A civil action brought in state court may be removed by a defendant to federal district court if, at the time of removal, the case is one over which the district court has original jurisdiction. 28 U.S.C. § 1441(a). The Class Action Fairness Act ("CAFA") confers original jurisdiction to the district courts over any class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant, the amount in controversy exceeds $5,000,000, and the number of members of all proposed plaintiff classes is at least 100. 28 U.S.C. § 1332(d). "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co. v. Owens* ("*Dart Cherokee*"), 574 U.S. 81, 89 (2014). "Through CAFA, Congress broadened federal diversity jurisdiction over class actions by, among other things, replacing the typical requirement of complete diversity with one of only minimal diversity." *Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 882 (9th Cir. 2013) ().

To remove a case from a state court to a federal court, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The removing defendant bears the burden of establishing federal jurisdiction. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). The Supreme Court has advised that "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89. Indeed, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* (quoting S. Rep. No. 109–14, p. 43 (2005)). *See also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively."). "A defendant's amount in controversy allegation

is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'" *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 87).

Where a plaintiff seeks remand of a removed action, the plaintiff may make either a "facial" or "factual" challenge to the defendant's jurisdictional allegations in the notice of removal. *Harris v. KM Indus., Inc.* ("*KM Indus.*"), 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the defendant's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks, alteration, and citation omitted). "A factual attack contests the truth of the allegations themselves." *Id.* (internal quotation marks, alteration, and citation omitted). A defendant facing a "factual" challenge to its jurisdictional allegations bears the burden of providing "competent proof" that shows, by a preponderance of the evidence, that the jurisdictional requirements are satisfied. *Id.* at 699, 701. "[T]he removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million, as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (internal quotation marks and citation omitted). Although a plaintiff may present evidence in support of a factual attack, the plaintiff "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *KM Indus.*, 980 F.3d at 700.

## III. DISCUSSION

Here, Plaintiff does not dispute that Defendant has met its burden to establish diversity between the parties[1] and challenges only Defendant's showing as to the amount in controversy. (Mot. at 12–17). Specifically, Plaintiff contends that Defendant's

---

[1] Plaintiff erroneously states that Defendant must establish "complete diversity." (Mot. at 11). Under CAFA, however, a removing defendant need establish only minimal diversity. *See* 28 U.S.C. § 1332(d). The Court concludes that Defendant, which is a citizen of New York and Delaware for purposes of determining diversity jurisdiction, (Notice of Removal ¶ 14), has done so here.

calculations of the amount in controversy are based on "unreasonable" assumptions "not supported by any evidence, the allegations in the Complaint, or workplace realities." (*Id.* at 13). To successfully defeat her Motion, Plaintiff contends, Defendant must "produce[] 'summary judgment-type evidence'" in support of its claimed amount in controversy. (*Id.* at 16 (quoting *Tompkins v. Basic Rsch. LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, at *3 (E.D. Cal. Apr. 22, 2008)). Finally, Plaintiff asks the Court to exercise its discretion to award her attorneys' fees in the amount of $7,500 as a form of reimbursement for "unnecessary litigation costs." (*Id.* at 17–18).

Defendant opposes on all grounds. First, Defendant asserts that it need not submit any evidence in support of its Notice of Removal. (Opp. at 6). As Defendant notes, however, despite criticizing the lack of any accompanying evidence, Plaintiff does not actually argue that such evidence must be presented at the time of removal. (*Id.*). Second, Defendant contends that its amount in controversy calculations are sound and rest on allegations contained in Plaintiff's Complaint. (*Id.* at 6–7). Third, Defendant argues that Plaintiff's challenge is merely facial, and not factual, and that Defendant need not set forth any evidence in support of jurisdiction. (*Id.* at 12–14). In the event the Court disagrees, however, Defendant advances a declaration from Roger Esnard, (ECF No. 24-1 ("Esnard Declaration")), who is employed by Defendant as Director, People Systems, in support of its amount in controversy calculations, (Opp. at 7–8). Finally, although Defendant contends that remand is not warranted, it also argues that attorney's fees would be inappropriate even if the Court grants Plaintiff's Motion because "Defendant had an objectively reasonable basis for contending that CAFA's amount in controversy requirement is met." (*Id.* at 22).

### A. Type of Jurisdictional Challenge

As an initial matter, the parties dispute whether Plaintiff mounts a facial or factual challenge to the jurisdictional allegations in Defendant's notice of removal. (Opp. at 12 (contending "Plaintiff makes only a 'facial' challenge to the Notice of Removal's allegations" and does not "introduc[e] evidence outside the pleadings" (quoting *Salter v.*

*Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020)); Reply at 2 (contending Defendant must "proffer . . . evidence" in order to support its claim of damages in excess of $5 million)).

The Court agrees that, by refusing to accept the truth of Defendant's jurisdictional allegations, Plaintiff mounts a factual attack on Defendant's claimed CAFA jurisdiction. *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." (internal quotation marks and citation omitted)). The fact that Plaintiff herself has not "introduc[ed] evidence outside the pleadings" to challenge Defendant's claimed damages, *see* (Opp. at 12 (quoting *Salter*, 974 F.3d at 964)), does not render Plaintiff's challenge merely facial. Instead, a "challenge [to] the truth of the defendant's jurisdictional allegations" in the form of "a reasoned argument as to why any assumptions on which they are based are not supported by evidence" constitutes a factual attack; the Ninth Circuit does not require a plaintiff to introduce evidence outside the pleadings. *KM Indus.*, 980 F.3d at 700. Here, although Plaintiff does not introduce extrinsic evidence of her own, she expressly questions the reasonableness of certain assumptions Defendant made when calculating the damages at issue in this action.[2] (Mot. at 12–16). Based on the facts of this case, Plaintiff's challenge constitutes a factual attack. The Court will therefore apply the higher evidentiary standard requiring the Defendant to submit "competent proof" that shows, by a preponderance of the evidence, that the jurisdictional requirements are satisfied. *KM Indus.*, 980 F.3d at 701.

### B. Whether Defendant Met its Amount in Controversy Burden

To determine whether Defendant has met its burden to establish an amount in controversy in excess of $5 million, the Court considers the Complaint, Defendant's allegations in its Notice of Removal, and "summary-judgment-type evidence relevant to

---

[2] Defendant contends that Plaintiff's argument "is not reasoned." (Opp. at 12). The Court disagrees—Plaintiff articulates specific objections to Defendant's calculations rather than simply asserting, in conclusory fashion, that the calculations are incorrect.

the amount in controversy at the time of removal." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citation omitted). The "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (citation omitted).

Here, Defendant's Notice of Removal asserts that the amount in controversy exceeds $5 million based on calculations of damages as well as attorneys' fees. (Notice of Removal ¶¶ 23–26). Defendant identifies at least 4,007 former employees that belong to the putative class. (*Id.* ¶ 24). "[B]ased on Plaintiff's allegations and an initial review of shift data," Defendant then assumes that these individuals "worked shifts on average of approximately five hours per day worked." (*Id.*). Defendant contends that a 100% violation rate is appropriate for purposes of calculating damages and arrives at the estimated amount of $9,773,073 by multiplying 4,007 (100% of the employees in the putative class), by $16.26 ("the approximate average of each such former employee's final hourly rate of pay"), times five hours (those individuals' average shift length), times 30 days (the maximum days of penalty pay allowed under California Labor Code § 203). (*Id.* ¶¶ 23–24). Defendant then, by applying the Ninth Circuit 25% "benchmark" rate, uses this figure to calculate attorneys' fees in the amount of $2,443,268. (*Id.* ¶¶ 25–26).

Plaintiff argues these calculations are "removed from workplace realities" and based on "improper assumptions" regarding both the number of employees at issue and the violation rate. (Mot. at 13). Specifically, Plaintiff contends that Defendant improperly assumes one of the four following scenarios in applying a 100% violation rate:

1. All 4,007 former employees worked meal break eligible shifts thirty days per month for the full three-year period predating Plaintiff's initiation of this lawsuit;
2. All 4,007 former employees worked eight hour shifts and were told to continue working but to clock out after eight hours to avoid triggering overtime pay;

3. All 4,007 former employees "earned additional remuneration and worked overtime during the same pay period"; or

4. All 4,007 former employees "earned commissions or other types of regular rate eligible additional remuneration during the same pay period that they were paid a meal and/or rest break premium wage."

(*Id.*). Plaintiff contends that Defendant artificially inflated the number of individuals in the putative class by including all hourly, non-exempt employees without excluding employees who did not work shifts long enough to entitle them to meal breaks and rest periods, as well as employees who were not required to clock out and continue working. (*Id.* at 13–14). Finally, even if the total number of employees, their average pay rates, and their average shift lengths are accurately represented—a matter Plaintiff disputes—Plaintiff argues that Defendant's 100% violation rate lacks support. (*Id.* at 9, 14–15).

In opposition, Defendant argues that its calculations are sound. In support of its 100% violation rate, Defendant argues that Plaintiff advances ten theories of liability as to all hourly, non-exempt employees, without limiting the putative class only to those employees who worked overtime-eligible shifts. (Opp. at 6–7). Defendant also emphasizes Plaintiff's allegations that, as a result of Defendant's purported violations, employees in the putative class were never properly paid final wages. (*Id.* at 17 (quoting Compl. ¶¶ 45, 108)). Given Plaintiff's allegations, Defendant argues that it may reasonably assume that all members of the putative class experienced at least one violation of a failure to pay wages and thus are each entitled to some amount of damages, including statutory waiting time penalties. (*Id.* at 7, 16–17).

Defendant also submits evidentiary support for its calculations. Mr. Esnard, Defendant's Director, People Systems, attests that, based on his review of Defendant's personnel data, "at least 3,996 non-exempt employees . . . were employed at one of [Defendant's] California locations who have employment termination dates between April 5, 2021, and April 5, 2024, and that the average final hourly rate of pay at the time of termination for those individuals was $16.13." (Esnard Decl. ¶ 4). Mr. Esnard also attests

that these employees worked approximately five hours per shift. (*Id.* ¶ 5). With these revised figures, Defendant's revised estimated amount in controversy is $9,668,322 in waiting time penalties, with an additional $2,417,050.50 in attorney's fees. (Opp. at 8).

The Court concludes that Defendant has met its burden to support its claimed damages. Defendant has provided evidentiary support for the number of employees in the putative class, their average hourly rate of pay at the time of their termination, and their average shift length. (Esnard Decl. ¶¶ 4–5). Plaintiff does not dispute Defendant's application of the 30-day maximum penalty pay multiplier, which is sought by the Complaint, (Compl. ¶ 109), and therefore properly applied based on Plaintiff's pleadings. *See Thompson v. La Petite Acad., Inc.*, No. 2:22-cv-04348-AB (JPRx), 2022 WL 5241838, at *4 (C.D. Cal. Oct. 6, 2022) (finding "assumption that each class member would be owed the maximum statutory penalty" proper where "such damages are evident from the face of the Complaint"). Nor does Plaintiff dispute Defendant's application of the 25% benchmark rate for attorney's fees. Instead, Plaintiff's sole objection is to Defendant's application of a 100% violation rate. But Plaintiff's characterization of the underlying assumptions required to support a 100% violation rate is overstated.

Importantly, Defendant does not, as Plaintiff asserts, need to assume that all members of the putative class worked five-hour shifts "30 days per month for the full three-year period," (Mot. at 13), in order to reasonably apply a 100% violation rate. Here, one of the many unlawful practices Plaintiff alleges is Defendant's purported failure to provide its employees with "an uninterrupted duty-free rest period of a net ten (10) minutes for every four (4) hours worked." (Compl. ¶ 33). Additionally, Plaintiff alleges Defendant failed to provide its employees with a meal period of no less than thirty minutes for each five-hour period of work. (*Id.* ¶¶ 15, 20, 27). As a result of these and other violations, Plaintiff contends that Defendant failed to provide accurate wage statements or to timely pay unpaid wages when putative class members left its employ. (*Id.* ¶¶ 42–45). "[E]ach current and former employee need only suffer *one* of the alleged violations at any time during employment to bring a claim for failure to timely page wages upon termination."

*Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.*, No. 2:23-cv-02802-MCS-JC, 2023 WL 5246264, at *4 (C.D. Cal. Aug. 14, 2023) (emphasis added). *See also* Cal. Lab. Code § 203(a); *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. ED CV 19-0839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) ("Defendant need only have caused a single violation per pay period for all wage statements to be inaccurate, and need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply."); *Demaria v. Big Lots Stores - PNS, LLC*, No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) (holding that "the recovery of waiting time penalties does not hinge on the number of violations committed").

"[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have some reasonable ground underlying them." *Arias*, 936 F.3d at 927 (internal quotation marks and citation omitted). Where Defendant's personnel record indicates that, on average, employees worked five-hour shifts, an assumption that each employee in the putative class was improperly deprived of either a mandated rest or meal period at least once during their employment with Defendant is reasonable. Such an assumption also reasonably supports the conclusion that employees received inaccurate pay statements at least once and that their final wages were not timely paid upon their termination. *See, e.g.*, *Noriesta*, 2019 WL 7987117, at *6 ("If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay violations.").

Plaintiff points out, correctly, that a "'pattern and practice' of doing something does not necessarily mean always doing something." (Mot. at 14 (quoting *Ibarra*, 775 F.3d at 1198–99). But here, to support a 100% violation rate, Defendant need only persuade the Court that it is more likely than not that each member of the putative class has a claim for at least one theory of liability raised in the Complaint. Defendant has met that burden.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion.[3]

**IT IS SO ORDERED.**

DATED: September 9, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court denies Plaintiff's request to remand this case to state court, it also denies as moot her request for attorney's fees incurred in conjunction with preparing this Motion. (Mot. at 17–18).